**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| MCKENZI TAYLOR, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff,*<br><br>      v.<br><br>KC VIN, LLC, d/b/a PIZZA BAR, et al.,<br><br><br><br>      *Defendants.* | Case No. 4:19-cv-00110-DGK |

**UNITED STATES OF AMERICA'S SUGGESTIONS IN**
**SUPPORT OF THE CONSTITUTIONALITY OF THE**
**TELEPHONE CONSUMER PROTECTION ACT OF 1991**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

I.     To Avoid Unnecessary Constitutional Adjudication, the Court Should Decline To
Reach the Constitutionality of The Government-Debt Exception ................................4

        A.     Courts Regularly Consider Severability First To Avoid Constitutional
Questions ...........................................................................................................4

        B.     The Government-Debt Exception Is Severable .................................................5

        C.     Because Striking Down the Government-Debt Exception Would Provide
No Relief, the Court Should Decline To Determine the Exception's
Constitutionality ................................................................................................6

II.    Neither the Autodialer Restriction Nor the Do-Not-Call Restriction Are Subject to
Strict Scrutiny ...........................................................................................................6

        A.     The TCPA's Exemptions For Government Entities, Government Agents,
and Nonprofits Do Not Trigger Strict Scrutiny ...............................................7

        B.     If the Court Reaches the Issue, It Should Determine That the Government-
Debt Exception Does Not Render the Autodialer Restriction Content Based ...........8

III.   The Autodialer Restriction and Do-Not-Call Provisions Would Also Pass Strict
Scrutiny ...................................................................................................................10

        A.     The Autodialer Restriction and Do-Not-Call Provisions Further A
Compelling Privacy Interest ...........................................................................10

        B.     The Autodialer Restriction and Do-Not-Call Provisions Are Narrowly
Tailored And Not Underinclusive ...................................................................11

IV.   If the Court Were To Hold the Government-Debt Exception Unconstitutional, The
Proper Remedy Would Be Severance .......................................................................13

V.    Defendants' Remaining Constitutional Challenges Lack Merit ...............................13

        A.     The Autodialer Restriction and the Do-Not-Call Authorizing Provisions
Satisfy the Equal Protection Clause ...............................................................13

        B.     The Autodialer Restriction Is Not Unconstitutionally Vague .......................14

# TABLE OF AUTHORITIES

**CASES**

*Advantage Media, LLC v. City of Eden Prairie,*
   456 F.3d 793 (8th Cir. 2006) ............................................................................................ 4

*Alaska Airlines, Inc. v. Brock,*
   480 U.S. 678 (1987) .......................................................................................................... 5

*Am. Ass'n of Political Consultants, Inc. v. FCC,*
   923 F.3d 159 (4th Cir. 2019) ..................................................................................... 1, 5, 9

*Brickman v. Faceookbook, Inc.,*
   230 F. Supp. 3d 1036 (N.D. Cal. 2017) .......................................................................... 12, 13

*Campbell-Ewald Co. v. Gomez,*
   136 S. Ct. 663 (2016) ..................................................................................................... 8, 13

*Carey v. Brown,*
   447 U.S. 455 (1980) ......................................................................................................... 10

*Carpenter v. United States,*
   138 S. Ct. 2206 (2018) ....................................................................................................... 2

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
   447 U.S. 557 (1980) ........................................................................................................... 8

*Duguid v. Facebook, Inc.,*
   926 F.3d 1146 (9th Cir. 2019) .................................................................................... 1, 5, 6

*Fraternal Order of Police, N.D. State Lodge v. Stenehjem,*
   431 F.3d 591 (8th Cir. 2005) ....................................................................................... 7, 12

*Frisby v. Schultz,*
   487 U.S. 474 (1988) ......................................................................................................... 11

*Gallion v. Charter Commc'ns, Inc.,*
   287 F. Supp. 3d 920 (C.D. Cal. 2018) ............................................................................ 10

*Gallion v. United States,*
   772 F. App'x 604 (9th Cir. 2019) ...................................................................................... 7

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ...................................................................................................... 6, 15

*Greenley v. Laborers' Int'l Union of N. Am.,*
   271 F. Supp. 3d 1128 (D. Minn. 2017) ....................................................................... 10, 12

ii

*Gresham v. Rutledge,*
    198 F. Supp. 3d 965 (E.D. Ark. 2016) ................................................................ 12, 13

*Gresham v. Swanson,*
    866 F.3d 853 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 682 (2018) ...............................5

*INS v. Chadha,*
    462 U.S. 919 (1983) .........................................................................................5

*Kirkeby v. Furness,*
    92 F.3d 655 (8th Cir. 1996 ...................................................................... 10, 11

*Marks v. Crunch San Diego, LLC,*
    904 F.3d 1041 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1289 (2019) ...................15

*McCorkle v. United States,*
    559 F.2d 1258 (4th Cir. 1977) ...........................................................................5

*Mejia v. Time Warner Cable, Inc.,*
    2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) ......................................................8

*Mey v. Venture Data, LLC,*
    245 F. Supp. 3d 771 (N.D.W. Va. 2017) ...........................................................9

*Mims v. Arrow Fin. Servs., LLC,*
    565 U.S. 368 (2012) .........................................................................................2

*Moser v. FCC,*
    46 F.3d 970 (9th Cir. 1995) ...............................................................................6

*Nw. Austin Mun. Util. Dist. No. One v. Holder,*
    557 U.S. 193 (2009) .........................................................................................4

*Orin v. Barclay,*
    272 F.3d 1207 (9th Cir. 2001) .........................................................................14

*Patriotic Veterans, Inc. v. Zoeller,*
    845 F.3d 303 (7th Cir. 2017), *cert. denied*, 137 S. Ct. 2321 (2017) ....................... 7, 9

*Pleasant Grove City v. Summum,*
    555 U.S. 460 (2009) .........................................................................................8

*Powell v. Ryan,*
    855 F.3d 899 (8th Cir. 2017) ...........................................................................15

*Reed v. Town of Gilbert,*
    135 S. Ct. 2218 (2015) ................................................................................ 7, 10

Case 4:19-cv-00110-DGK   Document 59   Filed 08/26/19   Page 4 of 22

*Regan v. Time, Inc.,*
    468 U.S. 641 (1984) ........................................................................................................5

*Reno v. ACLU,*
    521 U.S. 844 (1997) ......................................................................................................12

*Rosenberger v. Rector & Visitors of Univ. of Va.,*
    515 U.S. 819 (1995) ........................................................................................................9

*Rowan v. U.S. Post Office Dep't,*
    397 U.S. 728 (1970) ......................................................................................................11

*Sessions v. Morales-Santana,*
    137 S. Ct. 1678 (2017) ....................................................................................................6

*Susinno v. Work Out World, Inc.,*
    862 F.3d 346 (3d Cir. 2017) ..........................................................................................14

*Turner Broad. Sys., Inc. v. FCC,*
    512 U.S. 622 (1994) ........................................................................................................7

*Van Bergen v. Minnesota,*
    59 F.3d 1541 (8th Cir. 1995) ....................................................................................9, 15

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ......................................................................................................15

*Weed v. Jenkins,*
    873 F.3d 1023 (8th Cir. 2017) ..................................................................................14, 15

## STATUTES

47 U.S.C. § 227 ........................................................................................................*passim*

47 U.S.C. § 608 ..................................................................................................................5

Bipartisian Budget Act of 2015,
    Pub. L. No. 114-74, 129 Stat. 584 ..................................................................................2

## REGULATIONS

47 C.F.R. § 64.1200..........................................................................................................3

## OTHER AUTHORITIES

H.R. Rep. No. 102-317 (1991) ........................................................................................12

*In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
    18 FCC Rcd. 14014 (July 3, 2003) ..................................................................................2

iv

**INTRODUCTION**

Defendants Entertainment Consulting International, LLC, the Cordish Companies, Inc., and KC VIN, LLC d/b/a Pizza Bar, (collectively "Defendants") have raised constitutional challenges to certain provisions of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"). Defendants first challenge § 227(b)(1)(A)(iii) of the TCPA (the "autodialer restriction"), which prohibits the use of an automatic telephone dialing system ("ATDS") to make a call or send a text message to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). Defendants ask this Court to strike down the autodialer restriction because it allegedly (1) is a content-based regulation of speech that fails to survive strict scrutiny, (2) violates equal protection principles, and (3) is void for vagueness.

Defendants' first argument – that the autodialer restriction is content based – is based in part on the presence of the government-debt exception. Recently, two appellate courts wrongly held the exception unconstitutional, but they correctly held it severable from the valid remainder of the robocall restriction. *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*AAPC*); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019).[1] Because Defendants would remain liable under the autodialer restriction if the government-debt exception were severed, the Court should decline to address the exception's validity to avoid unnecessary constitutional adjudication. By assuming, *arguendo*, that the exception is unconstitutional and holding it severable, the Court can appropriately avoid an unnecessary decision with respect to the exception's validity.

Even if the Court were to consider the government-debt exception, it would not render the TCPA content based. Nor would the TCPA's exemptions for government speech or for nonprofits

---

[1] The United States' petitions for rehearing in *AAPC* and *Duguid* were denied, and the United States is considering whether to seek certiorari.

1

(the latter exemption is relevant only to Defendants' other challenge, concerning provisions related to do-not-call registries). Thus, all challenged provisions are content neutral and easily survive intermediate scrutiny. But even if they were content based, they would still survive strict scrutiny because they are narrowly tailored to protect a compelling privacy interest. The autodialer restriction, for example, prohibits only the sorts of communications that Congress found most problematic – robocalls made without consumer consent – and no more. Therefore, all challenged provisions (including the government-debt exception) should be upheld in their entirety.

Defendants' remaining arguments should also be rejected. All challenged provisions satisfy equal protection requirements, and the autodialer restriction easily survives vagueness review.

## BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). The ubiquity of cell phones only aggravates such problems. "[I]ndividuals . . . compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences[.]" *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018). Two statutory sections are pertinent here. First, the TCPA's autodialer restriction makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States. 47 U.S.C. § 227(b)(1)(A)(iii).

Congress added the final clause in November 2015 as part of the Bipartisan Budget Act of 2015. *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588. The provision has long been interpreted to apply to both phone calls and text messages. *See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (July 3, 2003).

2

The TCPA also requires the FCC to prescribe regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1)-(2). Exempted from those regulations are calls made by a "tax exempt nonprofit organization." *Id.* § 227(a)(4)(C). The FCC has implemented regulations pursuant to this authority, including certain prohibitions on making telephone solicitations to numbers registered on do-not-call registries. *See* 47 C.F.R. § 64.1200(c)-(d). An individual who receives multiple calls within a year in violation of those regulations may sue, but the caller may raise a defense by demonstrating that it has implemented "reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations."[2] 47 U.S.C. § 227(c)(5).

Plaintiff brings this putative class action for damages under § 227(b)(1)(A)(iii) and (b)(3) of the TCPA (the "ATDS claim"), as well as 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200 (the "do-not-call claim"). First Amended Compl., ECF No. 24. Plaintiff alleges that Defendants sent unconsented text messages to his cell phone using an ATDS. *Id.* ¶¶ 48-53. Plaintiff further alleges that Defendants violated the do-not-call rules. *See, e.g., id.* ¶¶ 57-58.

Defendants have moved to dismiss on constitutional grounds. *See* Defs.' Mot. to Dismiss, ECF No. 41 ("Def. Mot."). With respect to the ATDS claim, Defendants contend that the autodialer restriction is subject to strict scrutiny because it discriminates based on speaker and content, *id.* at 11-13, and that it cannot survive strict scrutiny because the government's interest in promoting residential privacy is not compelling, and that even if it were, it is not narrowly tailored, *id.* at 13-14. Defendants also argue that the autodialer restriction violates equal protection and is vague. *Id.* at 14-15. As to the do-not-call claim, Defendants contend that the relevant regulations and their statutory authorizing provisions are content based and fail strict scrutiny. *Id.* at 12-14.

---

[2] The private right of action for Section 227(c)(5) is different (and more stringent) than the private right of action for Plaintiff's other claim, brought under Section 227(b).

3

On April 26, 2019, Defendants filed a Notice of Constitutional Question. *See* ECF No. 42. The United States acknowledged the question and requested additional time to determine whether to intervene. *See* ECF No. 50. The Court granted that request. *See* ECF No. 51.

## ARGUMENT

## I.    To Avoid Unnecessary Constitutional Adjudication, the Court Should Decline To Reach the Constitutionality of The Government-Debt Exception

Defendants argue that (1) the do-not-call provisions are unconstitutional because they do not apply to nonprofits, (2) the autodialer restriction is unconstitutional because it does not apply to the government or its agents, and (3) the autodialer restriction is also unconstitutional because it does not apply to calls to collect government-backed debt. Def. Mot. at 11-12. The Court can easily reject the first two arguments, *see infra* at 7-8, 10-13, but the Court need not – and therefore should not – determine the constitutionality of the government-debt exception. Even if the Court assumes the government-debt exception is unconstitutional (which it is not, *see infra* at 8-13), the exception is plainly severable and striking it down would provide no relief to Defendants. Thus, the Court should first determine that the government-debt exception is severable and then decline to reach the constitutionality of the exception to avoid unnecessary constitutional adjudication.

### A.    Courts Regularly Consider Severability First To Avoid Constitutional Questions

Courts generally "will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009). Thus, courts considering a constitutional challenge often conduct a threshold severability analysis, and if the challenged provision is severable and severance would provide no relief, the court may decline to rule on the constitutionality of that provision. *See, e.g., Advantage Media, LLC v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006) (declining to consider constitutionality of a severable provision after noting that "[t]he Supreme Court has incorporated severability analysis into standing

determinations when there was clear evidence of legislative intent," and that this approach "promotes important goals, notably the avoidance of unnecessary constitutional adjudication"); *McCorkle v. United States*, 559 F.2d 1258, 1261 (4th Cir. 1977) ("The canons of constitutional litigation dictate that we initially consider the statutory issue of separability before we turn to the question of constitutionality."); *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) (considering severability before constitutionality). This approach is applicable here because the government-debt exception is severable and because its severance would not affect Defendants' liability (*see infra*).

**B. The Government-Debt Exception Is Severable**

"[T]he invalid portions of a statute are to be severed '[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" *Chadha*, 462 U.S. at 931-32 (citation omitted). Thus, "the invalid part may be dropped if what is left is fully operative as a law," *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984), and would continue to "function in a manner consistent with the intent of Congress," *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis omitted).

Here, Congress enacted the autodialer restriction (passed in 1991) separately from the government-debt exception (added in 2015), and the restriction thus functioned independently from the exception for over two decades. Congress also provided a severability provision, 47 U.S.C. § 608. There can thus be no doubt that if the government-debt exception were severed, the remainder of the autodialer restriction would continue to function independently and in a manner consistent with the intent of Congress. Indeed, the two courts that have struck down the government-debt exception easily found it severable. *AAPC*, 923 F.3d at 171 ("[T]he explicit directives of the Supreme Court and Congress strongly support a severance of the debt-collection exemption[.]"); *accord Duguid*, 926 F.3d at 1156; *see also Gresham v. Swanson*, 866 F.3d 853, 854-55 (8th Cir. 2017) (new exception to state robocall ban was severable), *cert. denied*, 138 S. Ct. 682 (2018).

5

### C. Because Striking Down the Government-Debt Exception Would Provide No Relief, the Court Should Decline To Determine the Exception's Constitutionality

Defendants' alleged misconduct has nothing to do with the government-debt exception; rather, Defendants allegedly violated a ban on robocalls that has been in place since the TCPA's enactment, and that would remain in place even if the government-debt exception were severed. Thus, the government-debt exception has no effect on Defendants' liability. For this reason, the statute is not being "retroactively" applied to Defendants (*see* Def. Reply, ECF No. 57, at 2): the robocalls were unlawful at the time they were made, and they would remain unlawful if the government-debt exception were severed.[3] Indeed, the Ninth Circuit recently reversed a district court's dismissal of a TCPA case, allowing the case to proceed even though the government-debt exception was severed. *See Duguid*, 926 F.3d at 1157. Because severing the exception would not affect liability, the Court should decline to reach the merits of its constitutionality.[4]

### II. Neither the Autodialer Restriction Nor the Do-Not-Call Restriction Are Subject to Strict Scrutiny

Even if the Court were to consider the government-debt exception on the merits, the exception would not render the autodialer restriction content based. Prior to the addition of the government-debt exception, courts regularly held the TCPA content neutral, *see, e.g.*, *Moser v. FCC*, 46 F.3d 970, 973 (9th Cir. 1995); *see also Duguid*, 926 F.3d at 1153 (TCPA "repeatedly affirmed" under less than strict scrutiny), and neither the exception's addition nor the TCPA's non-

---

[3] While the analysis in criminal cases might be different, *see Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (distinguishing criminal liability); *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (no liability for criminal defendant convicted under unconstitutional ordinance that was later amended), that inquiry is not implicated here.

[4] Avoiding the constitutional question here does not insulate the government-debt exception from review but rather ensures that the constitutional issue is reached only when presented by an appropriate party. An individual receiving unwanted debt-collection calls pursuant to the exception could likely challenge the provision, and the Court could consider the constitutionality of the exception in circumstances in which its validity determines the availability of relief.

6

applicability to the government (or, for certain provisions, to nonprofits) changes that conclusion, for the reasons stated below. *See also Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 306 (7th Cir. 2017), *cert. denied*, 137 S. Ct. 2321 (2017). Thus, the TCPA is subject to at most intermediate scrutiny, and Defendant's motion should be denied.

## A. The TCPA's Exemptions For Government Entities, Government Agents, and Nonprofits Do Not Trigger Strict Scrutiny

Defendants argue that the autodialer restriction is subject to strict scrutiny because it does not apply to government entities or their agents, and that the do-not-call restrictions are subject to strict scrutiny because they do not apply to nonprofits. Def. Mot. at 12-13. These arguments fail.

As an initial matter, a speaker-based distinction triggers strict scrutiny only when "the legislature's speaker preference reflects a content preference," *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)), and a law reflects a content preference when it "applies to particular speech because of the topic discussed or the idea or message expressed," *id.* at 2227. That the TCPA does not apply to the government or nonprofits in no way evinces a content preference: those are exemptions based on *who* is speaking, not on *what* the speaker proposes to say. Thus, the exemptions are not content based and do not trigger strict scrutiny. Indeed, the Eighth Circuit has held that a robocall restriction's exemption for nonprofits was not content based and thus did not trigger strict scrutiny. *See Fraternal Order of Police, N.D. State Lodge v. Stenehjem*, 431 F.3d 591, 596 (8th Cir. 2005). That decision squarely forecloses Defendants' argument that the exemption for nonprofits triggers strict scrutiny, but also applies equally to Defendants' argument regarding government speakers. In any event, the Ninth Circuit just last month rejected Defendants' argument that "the claimed government speakers' preference" rendered the TCPA unconstitutional. *Gallion v. United States*, 772 F. App'x 604, 606 (9th Cir. 2019) (mem.).[5]

---

[5] The contention that exemptions for nonprofits trigger strict scrutiny is also in substantial

7

Moreover, with respect to the TCPA's non-applicability to government entities, it is not uncommon for the government to subject its own speech to different requirements than those applicable to private actors, and such provisions have never been thought to raise First Amendment concerns. *See, e.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009) ("The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech."). Indeed, such exemptions simply reflect the government's sovereign immunity. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672-74 (2016) (TCPA does not apply to federal government because of sovereign immunity); *Mejia v. Time Warner Cable, Inc.*, 2017 WL 3278926, at *15 (S.D.N.Y. Aug. 1, 2017) ("[T]he absence of TCPA liability for government speakers is only a confirmation of the general principle of sovereign immunity. To find otherwise would force Congress into an untenable Sophie's Choice between sovereign immunity and compliance with the First Amendment by requiring Congress to abrogate sovereign immunity every time it sought to restrict private speech.").

Nor are Defendants correct that the TCPA is subject to strict scrutiny because it shields from liability "government agents communicating 'authorized' messages." Def. Mot. at 12. These "authorized messages" endorse no content preference, but merely reflect the fact that a government contractor is entitled to derivative sovereign immunity when it is speaking on behalf of the government and in accordance with the government's instructions. *Gomez*, 136 S. Ct. at 672-74; *see also Summum*, 555 U.S. at 468 (the government may enlist private entities "for the purpose of delivering a government-controlled message").

**B. If the Court Reaches the Issue, It Should Determine That the Government-Debt Exception Does Not Render the Autodialer Restriction Content Based**

Defendants also contend that the autodialer restriction is content based because it does not

---

tension with the commercial speech doctrine, which subjects commercial speech to less than strict scrutiny. *See generally Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980).

8

apply to calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). In *Van Bergen v. Minnesota*, however, the Eighth Circuit made clear that an exemption like this one, which turns on the relationship between the caller and the called party, is not content based. *See* 59 F.3d 1541, 1550 (8th Cir. 1995); *accord Patriotic Veterans*, 845 F.3d at 304-05. That decision controls this case.[6]

In *Van Bergen*, the Eighth Circuit held that a Minnesota robocall regulation was not content based because its "central provision . . . applie[d] to all callers, with three exceptions . . . based on relationship rather than content." 59 F.3d at 1550. The same is true of the government-debt exception. Like the Minnesota statute, whether or not the autodialer restriction applies turns not on the content of a call, but principally on the relationship between two parties – namely, the relationship between the government and a debtor. *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 792 (N.D.W. Va. 2017) (holding the government-debt exception is based on relationship, not content). Indeed, a person could receive identical debt-collection calls that follow precisely the same script – for example, "Your student loan from Citibank is past due; please make a payment" – and the TCPA might treat the calls differently depending on the underlying relationship between the government and the debtor receiving the call. The fact that the exception may treat identical calls differently underscores that the provision does not principally depend on the content of the call.

Because its application does not turn solely on the content of the speech at issue, the government-debt exception is unlike the provisions in *Reed*, which involved an ordinance that

---

[6] To the extent Defendants also argue that the autodialer restriction's exemption for calls made for emergency purposes renders it unconstitutional, *see* Def. Mot. at 12, that argument fails. *Cf. AAPC*, 923 F.3d at 169-70 (discussing emergency exception). Nor is the government-debt exception a viewpoint-based restriction on speech. *See* Def. Mot. at 11. Viewpoint discrimination occurs when the application of the provision turns on "the specific motivating ideology or the opinion or perspective of the speaker." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). The applicability of the autodialer restriction does not depend on such matters.

9

exempted twenty-three categories of signs from a general permit requirement and subjected them to different rules based on what they said. 135 S. Ct. at 2224-25. The rules that "appl[ied] to any given sign thus depend[ed] *entirely* on the communicative content of the sign," and the Court therefore held the ordinance subject to strict scrutiny. *Id.* at 2227 (emphasis added). The autodialer restriction, by contrast, is a universally applicable restriction with a narrow, primarily relationship-based exception. Because the government-debt exception is relationship based, the autodialer restriction is content neutral and is not subject to strict scrutiny.[7]

## III. The Autodialer Restriction and Do-Not-Call Provisions Would Also Pass Strict Scrutiny

### A. The Autodialer Restriction and Do-Not-Call Provisions Further A Compelling Privacy Interest

The Supreme Court has made clear that the interest "in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order." *Carey v. Brown*, 447 U.S. 455, 471 (1980), and every court to have considered the issue has held that the TCPA promotes a compelling interest in personal and residential privacy.[8] Notwithstanding this unanimous precedent regarding the TCPA, Defendants cite *Kirkeby v. Furness* for the proposition that residential privacy is not a "compelling" interest. *See* 92 F.3d 655, 659 (8th Cir. 1996). The privacy interests at issue in *Kirkeby*, however, are wholly different from those protected by the autodialer restriction and do-not-call provisions. *Kirkeby* is thus inapplicable.

A critical distinction between *Kirkeby* and this case is the location of the offensive speech.

---

[7] A district court in this circuit held that the government-debt exception renders the robocall restriction content based but still upheld the restriction (including the exception) under strict scrutiny. *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149-51 (D. Minn. 2017).

[8] *See, e.g., Greenley*, 271 F. Supp. 3d at 1150 ("That [residential privacy] is a compelling interest is well-established in the Eighth Circuit and elsewhere."); *Gallion v. Charter Commc'ns, Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) (agreeing with "consensus view among district courts that the TCPA serves a compelling government interest in protecting residential privacy").

10

*Kirkeby* concerned a First Amendment challenge to an anti-picketing ordinance that "restrict[ed] free expression on the public streets, 'the archetype of a traditional public forum.'" 92 F.3d at 662 (alteration, citation omitted). The speech in that case, undertaken in a traditional public forum, has nothing to do with the calls and text messages regulated by the TCPA, which intrude into the most personal and intimate of spaces, including homes, hospitals, places of worship, and places of work.

Courts have never considered the privacy interests of people in public forums to be the same as the privacy interests in one's home, for good reason. Remarking on "the unique nature of the home, the last citadel of the tired, the weary, and the sick," the Supreme Court has recognized the paramount importance of "[p]reserving the sanctity" of that space. *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (alteration in original; quotation marks omitted). "Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different," and an "important aspect of residential privacy is protection of the unwilling listener." *Id.* (citations omitted). The Court has thus "categorically reject[ed] the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another. . . . The asserted right of a mailer, we repeat, stops at the outer boundary of every person's domain." *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 738 (1970); *see also, e.g., Frisby* 487 U.S. at 484-85. Because *Kirkeby* did not involve unwanted communications crossing the threshold of the home, its statement regarding residential privacy has no bearing on the privacy equities protected by the TCPA and it presents no impediment to this Court joining the consensus that the TCPA advances a compelling interest.[9]

### B. The Autodialer Restriction and Do-Not-Call Provisions Are Narrowly Tailored And Not Underinclusive

Although Defendants suggest that the autodialer restriction is not narrowly tailored and is

---

[9] Moreover, because the TCPA prevents robocalls made to private places beside the home (*e.g.*, hospitals, churches, and workplaces), it also advances interests *beyond* residential privacy.

11

underinclusive, they do not meaningfully argue *how* the autodialer restriction fails those tests. Def. Mot. at 13-14. Nor could they.[10] Although Defendants state (without explanation) that the TCPA "restrict[s] more speech than necessary," *id.* at 14, that is not true. The autodialer restriction's prohibition on unwanted robocalls is narrowly tailored because it restricts a limited method of communication – the use of certain technologies in placing calls – and only without the consent of the called party, making it closely drawn to the unwanted intrusions it aims to prevent. Defendants also cite, without explanation, *Gresham*, 198 F. Supp. 3d at 973, possibly for the proposition that the government could have used less restrictive alternatives. But "[l]ess restrictive alternatives [must] be *at least as effective* in achieving the legitimate purpose that the statute was enacted to serve," *Reno v. ACLU*, 521 U.S. 844, 874 (1997) (emphasis added), and courts have rejected the alternatives discussed in *Gresham* as less effective than the TCPA's restrictions on robocalls, *see, e.g., Greenley*, 271 F. Supp. 3d at 1151; *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1048-49 (N.D. Cal. 2017). Indeed, the facts of this case demonstrate the autodialer restriction's appropriate sweep: should Defendants wish to contact prospective customers, they may use an autodialer to do so after obtaining the person's consent, or may contact the person without using an autodialer.

Defendants fare no better with the conclusory argument that the autodialer restriction is

---

[10] Defendants also contend that the do-not-call provisions fail strict scrutiny, but again their brief does not meaningfully explain why. Although the do-not-call provisions' non-applicability to nonprofits does not trigger strict scrutiny, *see supra* at 7-8; *Stenehjem*, 431 F.3d at 596, the provisions would easily pass strict scrutiny in any event. The only speech restricted by the do-not-call provisions are calls to individuals who took the affirmative step to list their numbers on a do-not-call registry, a process that even Defendants' cited cases suggest is narrowly tailored. *See, e.g., Gresham v. Rutledge*, 198 F. Supp. 3d 965, 972 (E.D. Ark. 2016). And exempting nonprofits does not make the regulation underinclusive: as Congress found, the overwhelming amount of telephone solicitations are made by commercial entities like Defendants. *See, e.g.,* H.R. Rep. No. 102-317 at 16 (1991) ("[T]he record . . . does not contain sufficient evidence to demonstrate that calls from these tax exempt nonprofit organizations should be subject to the restrictions . . . . Complaint statistics show that unwanted commercial calls are a far bigger problem than unsolicited calls from political or charitable organizations.").

12

impermissibly underinclusive because it does not apply to government speech or to calls to collect government-backed debt. As discussed, there is no constitutional problem with the government exempting its own speech or the speech of contractors working on its behalf. And as for the government-debt exception, it is "limited by the fact that such calls would only be made to those who owe a debt to the federal government." *Brickman*, 230 F. Supp. 3d at 1047. The government-debt exception may also be cabined by the TCPA's express grant of authority to the FCC to "restrict or limit the number and duration of calls made . . . to collect a debt owed to or guaranteed by the United States."[11] *See* 47 U.S.C. § 227(b)(2)(H). In short, the government-debt exception is a narrow carve-out from the autodialer restriction's otherwise sweeping prohibition, and Defendants advance no meaningful argument as to how the government-debt exception could render the autodialer restriction underinclusive.[12]

## IV. If the Court Were To Hold the Government-Debt Exception Unconstitutional, The Proper Remedy Would Be Severance

Even if the Court were to reach the question of the constitutionality of the government-debt exception, and even if the Court were to find it unconstitutional, the proper remedy would be to sever the exception, for the reasons stated *supra*, at 5.

## V. Defendants' Remaining Constitutional Challenges Lack Merit

### A. The Autodialer Restriction and the Do-Not-Call Authorizing Provisions Satisfy the Equal Protection Clause

Defendants cursorily argue that both the autodialer restriction and the TCPA's provisions

---

[11] Moreover, the government-debt exception authorizes only a limited number of additional calls. Because the autodialer restriction does not apply to the government or its agents, *Gomez*, 136 S. Ct. at 673, the only additional calls allowed by the exception are those made by private entities that are not acting pursuant to a federal contract and that have not obtained the debtor's consent. There is no reason to think this category of calls is substantial.

[12] Defendants again cite *Gresham*, which struck down a state TCPA analogue, but unlike the TCPA's autodialer restriction, the Arkansas statute was obviously underinclusive in that it *only* applied to the sale of goods or services or political campaigns. *See* 198 F. Supp. 3d at 971-73.

13

authorizing the do-not-call registry violate equal protection principles. But Defendants concede that this argument entirely depends on the "same reasons" Defendants gave for their First Amendment argument. Def. Mot. at 14. Because Defendants' First Amendment arguments fail, so too does their Equal Protection argument. *See Orin v. Barclay*, 272 F.3d 1207, 1213 n.3 (9th Cir. 2001) (Equal Protection challenge was "subsumed by . . . First Amendment claim").

### B. The Autodialer Restriction Is Not Unconstitutionally Vague

Defendants also assert that they cannot be liable under the autodialer restriction because the definition of an ATDS is unconstitutionally vague. Def. Mot. at 14-15. The TCPA defines an ATDS as follows:

> The term "automatic telephone dialing system" means equipment which has the capacity—
>> (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>> (B)     to dial such numbers.

47 U.S.C. § 227(a)(1).

Relying on a D.C. Circuit case that struck down an FCC order interpreting this definition, Defendants argue that the statutory definition is unconstitutionally vague in the absence of that order because it "fail[s] to give a person of ordinary intelligence adequate notice of what" constitutes an ATDS. Def. Mot. at 15; *see Weed v. Jenkins*, 873 F.3d 1023, 1030 (8th Cir. 2017).

Eighth Circuit precedent squarely precludes this argument.[13] In *Van Bergen*, the Eighth Circuit rejected a vagueness challenge to Minnesota's analog to the TCPA, which generally prohibited the use of "automatic dialing-announcing devices" ("ADADs"), defined as "a device that

---

[13] It appears that only one court of appeals has considered – and rejected – a vagueness challenge to the TCPA. *See Susinno v. Work Out World, Inc.*, 862 F.3d 346, 349 n.1 (3d Cir. 2017) ("[W]e would not find the TCPA void for vagueness where, as here, it neither 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' nor 'authorizes or even encourages arbitrary and discriminatory enforcement.'") (citation omitted).

14

selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called." 59 F.3d at 1545 n.2. The Eighth Circuit further explained that ADADs "can dial telephone numbers either according to a pattern (*e.g.*, consecutive or random numbers) or as programmed." *Id.* at 1545. In short, the Minnesota statute's definition of an ADAD was materially indistinguishable from the TCPA's definition of an ATDS. *See id.* at 1548 ("The Minnesota statute is 'virtually identical' to the TCPA[.]"). Thus, Defendant's vagueness challenge is foreclosed.

Even absent this controlling precedent, Defendants' argument would fail on its own terms. Defendants' vagueness argument amounts to a complaint that the TCPA does not precisely identify all devices that qualify as an ATDS. *See* Def. Mot. at 14-15. But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Powell v. Ryan*, 855 F.3d 899, 903 (8th Cir. 2017) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)); *see also Grayned*, 408 U.S. at 110 n.15 ("It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'"). So long as a statute uses "words of common understanding," as the TCPA does, the statute will pass constitutional muster. *See Weed*, 873 F.3d at 1030.

Indeed, even after the FCC's interpretive regulation was struck down, the Ninth Circuit had no trouble applying standard statutory interpretation techniques to arrive at a workable definition of an ATDS, underscoring that the definition is not vague. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1049-52 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1289 (2019). Moreover, the TCPA was in effect for more than a decade after its passage without such a regulation, *see id.* at 1045, and it does not appear to have been seriously questioned on vagueness grounds during that time. Defendants' vagueness challenge is meritless.

Respectfully submitted this 26th day of August, 2019,

15

JOSEPH H. HUNT
Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s/ Joshua C. Abbuhl*
JOSHUA C. ABBUHL
Trial Attorney (D.C. Bar No. 1044782)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 616-8366 (tel.)
(202) 616-8470 (fax)
Joshua.Abbuhl@usdoj.gov

*Counsel for the United States of America*

16

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2019, the foregoing document was electronically filed with the Court's Electronic Filing System which served the document electronically on all registered attorneys of record.

/s/ Joshua C. Abbuhl
JOSHUA C. ABBUHL
Trial Attorney (D.C. Bar No. 1044782)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 616-8366 (tel.)
(202) 616-8470 (fax)
Joshua.Abbuhl@usdoj.gov

*Counsel for the United States of America*